**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

| | |
|---|---|
| **IVELIESE NIOLA, IVEON NIOLA**, by her mother and natural guardian, IVELIESE NIOLA, **CHRISTOPHER NIOLA**, by his mother and natural guardian, IVELIESE NIOLA, **KYLE NIOLA**, by his mother and natural guardian, IVELIESE NIOLA, **JOSELINE NIOLA**, by her mother and natural guardian, , IVELIESE NIOLA, and **JOHN ROSARIO**, by his mother and natural guardian, IVELIESE NIOLA, | : : : : : : : : : : |

**CIVIL ACITON NO.:**
**10- CIV-2255 (ILG) (RER)**

**AMENDED COMPLAINT**

Plaintiff(s)

against

**PLAINTIFFS DEMAND TRIAL BY JURY**

**THE CITY OF NEW YORK**; Police Officer **DOMINICK VASATURO** [Shield No. 11065]; Police Officer **ODO PENNISTON** [Shield No. 5093]; Sergeant **NICHOLAS VANDYKE** [Shield No. 2363]; "JOHN DOE"; and "JANE DOE", the names of the last defendants being fictitious, the true names of the defendants being unknown to the plaintiff(s),

Defendant(s).
------------------------------------------------------------x

TAKE NOTICE, the Plaintiffs, Iveliese Niola, Iveon Niola, Christopher Niola, Kyle Niola, Joseline Niola and John Rosario, hereby appear in this action by their attorneys, NNEBE & ASSOCIATES, P.C., and demand that all papers be served upon them, at the address below, in this matter.

Plaintiffs, by their attorneys, NNEBE & ASSOCIATES, P.C., complaining of the defendants, The City of New York, Police Officer Dominick Vasaturo [Shield No. 11065], Police Officer Odo Penniston [Shield No. 5093], Sergeant Nicholas Vandyke [Shield No. 2363], John Doe and Jane Doe, collectively referred to as the defendants, upon information and belief allege as follows:

**<u>NATURE OF THE ACTION</u>**

1.      This is an action at law to redress the deprivation of rights secured to the plaintiffs under color of statute, ordinance, regulation, custom, and or to redress the deprivation of rights, privileges, and immunities secured to the plaintiffs by the First, Fourth, Fifth, Eighth, and

Fourteenth Amendments to the Constitution of the United States, and by 42 U.S.C. § 1983 [and § 1985], [and arising under the law and statutes of the State of New York].

2.    This is an action to further seek compensation for the serious and permanent personal injuries sustained by the plaintiffs, as a result of the malicious actions and negligence of the defendants, arising from the illegal and unlawful arrest and detention of plaintiff Iveliese Niola in September 2007 and February 2009, respectively, and the serious and permanent personal injuries sustained by the plaintiffs as a result of the assault, arrest, detention and excessive use of force by the defendants.

## JURISDICTION

3.    The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343(a), and this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, treaty, customary international law and norms, custom and usage of a right, privilege and immunity secured to the plaintiffs by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States. Jurisdiction of this court exists pursuant to 42 U.S.C § 1983 and under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

4.    All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this Court's jurisdiction are based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear state law causes of action. The events, parties, transactions, and injuries that form the basis of plaintiffs' federal claims are identical to the events, parties, transactions, and injuries that form the basis of plaintiffs' claims under applicable State and City laws.

5.    As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## PARTIES

6.    Plaintiffs, single parent and her five (5) children, reside in Brooklyn, New York and are residents of the State of New York.

7.    Defendants Police Officer Dominick Vasaturo [Shield No. 11065], Police Officer Odo Penniston [Shield No. 5093], and Sergeant Nicholas Vandyke [Shield No. 2363], John Doe and Jane Doe are police officers of New York City Police Department assigned to the 83rd Precinct, 480 Knickerbocker Ave., Brooklyn, NY 11237, acting under color of state law ("defendant police officers"). They are being sued in both their individual and official capacities.

8.    The defendant City of New York is a municipality in the State of New York and employs defendant police officers.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9.      On or about September 9, 2007, at approximately 6:00PM, defendant police officers assigned to the New York Police Department's 83rd Precinct ("NYPD-83rd Precinct"), without probable cause and or justification, arrested plaintiff Iveliese Niola ("Ms. Niola") at her mother's home which is located at 46A Bleecker Street, Brooklyn, New York 11221, County of Kings, City and State of New York, and falsely charged Ms. Niola with PL 120.00 'Assault in the third degree,' amongst other charges. Additionally, on or about February 18, 2009, at approximately 2:00PM, defendant police officers assigned to the NYPD-83rd Precinct, without probable cause and or justification, arrested Ms. Niola at her former residence which is located at 140 Menahan Street, Apt. 5J, Brooklyn, New York 11221, County of Kings, City and State of New York, and falsely charged Ms. Niola with PL 120.00 'Assault in the third degree,' amongst other charges.

10.     Prior to the September 9, 2007 arrest, Ms. Niola, who was visiting her mother at the time, was about to go to the store when she was assaulted at her mother's home by Wanel Rosario, her youngest son John's father, who was never invited nor had any reason to be at her mother's home.

11.     Following the September 9, 2007 assault, the defendant police officers working in concert with Mr. Rosario arrested Ms. Niola at her mother's home. At the time of the arrest, Ms. Niola repeatedly inquired as to the reason why she was been arrested. However, the defendant police officers simply ignored Ms. Niola's inquiries.

12.     That Mr. Rosario has several police officer friends and relatives assigned to the NYPD-83rd Precinct including but not limited to his cousin named Jesus.

13.     On numerous occasions prior to the September 9, 2007 assault and the subsequent arrest, Mr. Rosario had maintained that he could assault Ms. Niola and do whatever he wanted to her because of his contacts and or connections at the NYPD-83rd Precinct, and had insinuated that he could have Ms. Niola arrested at anytime by his police officer friends and relatives assigned to the NYPD-83rd Precinct.

14.     Following the September 9, 2007 arrest, the defendant police officers tightly handcuffed Ms. Niola with her hands placed behind her back, and transported Ms. Niola to the NYPD-83rd Precinct.

15.     While at the precinct, Ms. Niola was pedigreed and detained for a lengthy period of time by the defendant police officers. During the time while Ms. Niola was illegally detained, Ms. Niola requested medical treatment, food and drink, and was very worried and highly concerned about her 5 children, who did not have anyone else to care for them. However, the defendant police officers ignored Ms. Niola's request(s) and her entreaties. During the entire time, Ms. Niola was not afforded any opportunity to speak with her counsel or to even contact her family and friends and inform them of her arrest and or whereabouts.

16.     On or about September 9, 2007, the defendant police officers transported Ms. Niola to the Central Booking with her hands tightly handcuffed behind her back. Eventually, Ms. Niola was brought before a judge, after about 72 hours after her arrest. Upon arraignment, Ms. Niola was charged with PL 120.00 'Assault in the third degree,' amongst other charges.

17.     Ms. Niola was eventually released after her arraignment, but subsequently returned to the Criminal Court on numerous occasions to defend the false and malicious charges that were levied against her by the defendants. In or about March 2008, the false charges levied against Ms. Niola by the defendants were summarily dismissed.

18.     Prior to the February 18, 2009 arrest, Mr. Rosario had suddenly appeared at the plaintiffs' home uninvited. When Ms. Niola asked Mr. Rosario to leave, she was assaulted by Mr. Rosario at her home and in front of her children.

19.     Following the February 18, 2009 assault, the defendant police officers working in concert with Mr. Rosario arrested Ms. Niola yet again; this time, at her own home. As during the September 9, 2007 arrest, Ms. Niola repeatedly inquired as to the reason why she was been arrested. However, the defendant police officers simply ignored Ms. Niola's inquiries. The defendant police officers, who were equally uninvited, forced their way into the plaintiffs' home. The defendant police officers pushed the door with great force and nearly slammed the door into then 13-year old Iveon. When Iveon, who was terrified at the time, inquired as to what was going on, the defendant police officers called her a "nasty bitch," and shoved and pushed her with great force and viciousness causing Iveon to sustain serious injuries. The defendant police officers then went into one of the rooms at the apartment used by Ms. Niola's children, and were basically searching and ransacking the plaintiffs' home.

20.     When Ms. Niola eventually stepped out of her bedroom and requested the defendant police officers to leave her apartment, she was called a "bitch" by the defendant police officers who instructed her to "shut up," and was immediately placed under arrest by the defendant police officers.

21.     Initially, the defendant police officers, all male, performed an illegal bodily search of Ms. Niola, and slammed Ms. Niola into a wall. Additionally, the defendant police officers literally dragged Ms. Niola into their police vehicle, and did not allow Ms. Niola to walk. In the process, the defendant police officers forcefully grabbed, pushed and shoved Ms. Niola with great force, slamming Ms. Niola's body into several objects along the way. As a result, Ms. Niola was caused to sustain serious injuries to her back, arms, shoulders and other parts of her body. Thereafter, the defendant police officers tightly handcuffed Ms. Niola with her hands placed behind her back and transported Ms. Niola to the NYPD-83rd Precinct.

22.     While at the NYPD-83rd Precinct, Ms. Niola was pedigreed and detained for a lengthy period of time by the defendant police officers. During the time while Ms. Niola was illegally detained at the NYPD-83rd Precinct, one of the defendant police officers

approached Ms. Niola and repeatedly pinched and or squeezed Ms. Niola's arms with great force in front of his colleagues who all cheered him on. Additionally, the defendant police officers taunted, ridiculed, derided, mocked and repeatedly made fun of Ms. Niola. Ms. Niola, who at the time was still tightly handcuffed and was defenseless, sustained serious injuries as a result. Further, Ms. Niola felt degraded, abused, debased, violated, and was, and still is, emotionally traumatized by the actions of the defendant police officers. Ms. Niola requested medical treatment, food and drink, and was very worried and highly concerned about her 5 children, who did not have anyone else to care for them. However, the defendant police officers ignored Ms. Niola's request(s) and her entreaties. During the entire time, Ms. Niola was not afforded any opportunity to speak with her counsel or to even contact her family and friends and inform them of her arrest and or whereabouts.

23.     Subsequently, the defendant police officers transported Ms. Niola to the Central Booking with her hands tightly handcuffed behind her back. Eventually, on or about February 19, 2009, Ms. Niola was finally brought before a judge. Upon arraignment, Ms. Niola was charged PL 120.00 'Assault in the third degree,' amongst other charges.

24.     Ms. Niola was eventually released after her arraignment, but subsequently returned to the Criminal Court on numerous occasions to defend the false and malicious charges that were levied against her by the defendants. On or about March 19, 2010, Ms. Niola's attorney accepted the defendants' offer to be released from the obligation of having to ceaselessly return to the Criminal Court in exchange for a violation charge of disorderly conduct for an incident that occurred in her own private apartment.

25.     That during the entire time while Ms. Niola was illegally arrested and unlawfully detained by the defendants as described herein, Ms. Niola requested but was denied access to counsel, medication, essentials, food and drink, as well as contact and visitation by her friends and family.

26.     That even though the defendants knew, or should have known based on the facts, that Ms. Niola did not commit any crime or offense, they still proceeded to arrest Ms. Niola, charge, and used excessive force to assault and imprison Ms. Niola just to intimidate Ms. Niola.

27.     That at no time during the arrest was Ms. Niola read her Miranda rights or allowed to make a phone call or inform her family that she had been arrested.

28.     That Ms. Niola was maliciously prosecuted without any just cause or reason, and with defendant police officers fully aware that Ms. Niola was innocent of the charges against her at all times relevant.

29.     At no time did Ms. Niola commit any offense against the laws of New York City and or State for which an arrest may be lawfully made. At no time did Ms. Niola trespass or obstruct any act or administration of government, or engage in any conduct which in any way justified the illegal and unlawful actions of the defendants.

30.     All of the foregoing occurred despite the fact that Ms. Niola had filed numerous complaints against Mr. Rosario in the past and actually obtained a restraining order against Mr. Rosario.

31.     As a direct and proximate result of defendants' actions, Iveon and Ms. Niola suffered and continue to suffer serious injuries, including but not limited to emotional distress, nightmares, panic attacks, mental anguish, unwarranted severe anger bouts, permanent scarring and severe physical pains in various parts of their bodies some or all of which may be permanent.

32.     The illegal and unlawful arrest of Ms. Niola, Ms. Niola's wrongful imprisonment particularly in light of the fact that the defendants had full knowledge of the lack of any legitimate cause or justification, were intentional, malicious, reckless and in bad faith.

33.     As a direct and proximate result of defendants' actions, Iveon and Ms. Niola suffered and continue to suffer, mental anguish, repetitive injury, psychological and emotional distress, and physical pain and suffering, some or all of which may be permanent.

34.     As a direct and proximate result of Ms. Niola's illegal and unlawful detention and confinement, Ms. Niola has lived and continues to live in constant fear, continues to suffer from nightmares, is now fearful of stepping outside and whenever she sees a police officer or is in the midst of police officers, she suffers various emotional setbacks and attacks. Additionally, Ms. Niola has been unable to function normally which has caused a severe strain and breakdown in her personal relationships, in and outside of her home and family circles.

35.     As a direct and proximate result of defendants' actions, Ms. Niola was arrested and imprisoned without just or probable cause.

36.     As a direct and proximate result of defendants' actions, plaintiffs were deprived of their due process rights, and rights, remedies, privileges, and immunities under the First, Fourth, Fifth, Eight, and Fourteenth Amendments to the United States Constitution and the laws of the City and State of New York.

37.     Defendant City of New York, acting through the New York Police Department, had actual and or de facto policies, practices, customs and or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, obligation not to promote or condone perjury and or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exits for such arrest. Additionally, defendant City of New York, acting through District Attorney Charles J. Hynes and the Office of the District Attorney of the County of Kings, had actual and or de facto policies, practices, customs and or usages of failing to properly train, supervise, and discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing witnesses and

informants, assessing the credibility of witnesses and informants, initiating criminal actions and the duty and or obligation of candor toward the court.

38.     That defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers, Assistant District Attorneys and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of the plaintiffs' injuries as described herein.

39.     The actions of defendants, acting under color of State law, deprived plaintiffs of their due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to free speech, to be secure in their person and property, to be free from the excessive use of force and from malicious prosecution, abuse of process, and the right to due process.

40.     By these actions, defendants have deprived plaintiffs of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

41.     That the actions of the defendants were malicious, illegal, unlawful, and directed at depriving plaintiffs of their constitutional rights, and of depriving Iveon, Christopher, Kyle, Joseline and John of the normal companionship, solace and society of their mother, Ms. Niola.

42.     This action has been commenced within three years after the occurrence of the event(s) upon which the claim is based.

## <u>AS A FIRST CAUSE OF ACTION</u>:

42 U.S.C § 1983 - all defendants

43.     Plaintiffs hereby restate paragraphs 1-42 of this complaint, as though fully set forth below

44.     By detaining and imprisoning Ms. Niola without justification, probable cause or reasonable suspicion, and using excessive force, defendants deprived Ms. Niola of her due process rights, and rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

45.     In addition, the defendant police officers conspired with other individuals and among themselves to deprive Ms. Niola of her constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to United States

Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

46.     The defendant police officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as agents and officers of the City of New York Police Department. Said acts by the individual defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and the individual defendants acted willfully, knowingly, and with the specific intent to deprive the plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

47.     The other individuals, including but not limited to Mr. Rosario, conspired and or agreed with the defendant police officers to perform the acts described herein including but not limited to the arrest, imprisonment, malicious prosecution and assault, and acted in concert with defendant police officers at all times relevant to inflict the unconstitutional injuries described herein.

48.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiffs sustained the damages hereinbefore stated.

## AS A SECOND CAUSE OF ACTION:

Excessive Force – defendant police officers

49.     Plaintiffs hereby restate paragraphs 1-48 of this complaint, as though fully set forth below

50.     In using excessive force, physically assaulting, tightly handcuffing, threatening, intimidating Iveon and Ms. Niola, the individual defendants, acting in their capacities as agents and officers of the City of New York Police Department, and within the scope of their employment, each committed a willful, unlawful, unwarranted, and intentional assault and battery upon Iveon and Ms. Niola.

51.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Iveon and Ms. Niola sustained the damages hereinbefore stated.

## AS A THIRD CAUSE OF ACTION:

False Arrest and False Imprisonment - all defendants

52.     Plaintiffs hereby restate paragraphs 1-51 of this complaint, as though fully set forth below

53.     The defendants wrongfully, illegally and unlawfully arrested, detained, and imprisoned Ms. Niola.

54.     The wrongful arrest, detention, and imprisonment of Ms. Niola were carried out without a valid warrant, without Ms. Niola's consent, and without probable cause or reasonable suspicion.

55.     At all relevant times, the defendants acted with excessive force in apprehending, detaining, and imprisoning Ms. Niola.

56.     Throughout this period, Ms. Niola was unlawfully, wrongfully, and unjustifiably harassed, detained, threatened, deprived of her liberty, and imprisoned.

57.     All of the foregoing occurred without any fault or provocation on the part of Ms. Niola.

58.     The defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of Ms. Niola's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct toward Ms. Niola.

59.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Ms. Niola sustained the damages hereinbefore stated.

### AS A FOURTH CAUSE OF ACTION:

Malicious Prosecution - all defendants

60.     Plaintiffs hereby restate paragraphs 1-59 of this complaint, as though fully set forth below

61.     Following her release from incarceration, Ms. Niola returned to the Criminal Court on numerous occasions pursuant to court orders to defend the false and malicious charges that were levied against her by the defendants. Eventually, the charges against Ms. Niola, as it pertains to the 2007 arrest, were summarily dismissed. With regard to the 2009 arrest, on or about March 19, 2010, Ms. Niola's attorney accepted the defendants' offer to be released from the obligation of having to ceaselessly return to the Criminal Court in exchange for a violation charge of disorderly conduct for an incident that occurred in her own private apartment.

62.     As a result of defendants' actions Ms. Niola was deprived of her liberty and due process rights and was restricted in her ability to travel and engage in her usual occupation and normal lifestyle.

63.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Ms. Niola sustained the damages hereinbefore stated.

### AS A FIFTH CAUSE OF ACTION:

Due Process Rights - all defendants

64.     Plaintiffs hereby restate paragraphs 1-63 of this complaint, as though fully set forth below

65.     The acts described herein had the intent and the effect of grossly humiliating and debasing Ms. Niola and inciting fear and anguish.

66.     These acts included, among other things, assault, denial of food and water, subjection to illegal bodily searches, sleep deprivation, lack of basic hygiene, exposure to prison inmates with history of violence and sexual abuse or depravation, exposure to violent aggressions, assault and harassment, denial of medical treatment, denial of access to medication and proper medical care, and denial of visitation and communication with family and friends.

67.     The defendants denied Ms. Niola the treatment needed to remedy her serious medical conditions and did so because of their deliberate indifference to Ms. Niola's need for medical treatment and care.

68.     Defendants are liable for said conduct in that defendants participated in, set the conditions, directly and or indirectly facilitated, ordered, acquiesced, confirmed, ratified and or conspired together in denying Ms. Niola her due process rights.

69.     Ms. Niola suffered severe immediate physical and psychological abuse as a result of the acts alleged herein. Ms. Niola continues to suffer profound physical and psychological trauma from the acts alleged herein.

70.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Ms. Niola sustained the damages hereinbefore stated.

## AS A SIXTH CAUSE OF ACTION:

Failure to Intervene – defendant police officers

71.     Plaintiffs hereby restate paragraphs 1-70 of this complaint, as though fully set forth below

72.     During the time while Ms. Niola was illegally detained at the NYPD-83rd Precinct, one of the defendant police officers approached Ms. Niola and repeatedly pinched and or squeezed Ms. Niola's arms with great force in front of his colleagues who all cheered him on. Additionally, the defendant police officers taunted, ridiculed, derided, mocked and repeatedly made fun of Ms. Niola. Ms. Niola, who at the time was still tightly handcuffed and was defenseless, sustained serious injuries as a result. Further, Ms. Niola felt degraded, abused, debased, violated, and was, and still is, emotionally traumatized by the actions of the defendant police officers.

73.     Clearly, the defendant police officers were aware that their colleague was abusing, debasing, humiliating and violating Ms. Niola's constitutional rights. Additionally, the defendant police officers had a realistic opportunity to intervene to prevent the harm detailed above from occurring but failed to intervene.

74.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Ms. Niola sustained the damages hereinbefore stated.

## AS A SEVENTH CAUSE OF ACTION:

First Amendment Retaliation – defendant police officers

75.     Plaintiffs hereby restate paragraphs 1-74 of this complaint, as though fully set forth below

76.     When Iveon, who was terrified at the time, inquired as to what was going on, the defendant police officers called her a "nasty bitch" and shoved and pushed her with great force and viciousness causing Iveon to sustain serious injuries.

77.     Additionally, when Ms. Niola eventually stepped out of her bedroom and requested the defendant police officers to leave her apartment, she was called a "bitch" by the defendant police officers who instructed her to "shut up," and was immediately placed under arrest by the defendant police officers.

78.     Clearly, the actions of defendant police officers were motivated by Iveon and Ms. Niola's exercise of their rights and interest protected by the First Amendment, and the actions of defendant police officers effectively chilled the exercise of Iveon and Ms. Niola's rights.

79.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Iveon and Ms. Niola sustained the damages hereinbefore stated.

## AS A EIGHTH CAUSE OF ACTION:

Illegal and Unreasonable Search & Seizure – defendant police officers

80.     Plaintiffs hereby restate paragraphs 1-79 of this complaint, as though fully set forth below

81.     The defendant police officers wrongfully, illegally, unlawfully and unreasonably performed a bodily search of Ms. Niola.

82.     The wrongful, illegal, unlawful and unreasonable search and seizure were carried out without warrant, without Ms. Niola's consent and without probable cause or reasonable suspicion.

83      All of the foregoing occurred without any fault or provocation on the part of Ms. Niola, and were in violation of the Fourth Amendment to United States Constitution.

84.     The defendant police officers acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of Ms. Niola's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct toward Ms. Niola.

85.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Ms. Niola sustained the damages hereinbefore stated.

## AS A NINTH CAUSE OF ACTION:

42 U.S.C. § 1985 – defendant police officers

86.     Plaintiffs hereby restate paragraphs 1-85 of this complaint, as though fully set forth below

87.     In an effort to find fault to use against Ms. Niola, the defendant police officers conspired among themselves, and conspired to deprive Ms. Niola of her constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

88.     In light of the foregoing therefore, the defendant police officers engaged in a conspiracy designed to deprive Ms. Niola of her constitutional and federal rights in violation of 42 U.S.C. § 1985.

89.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Ms. Niola sustained the damages hereinbefore stated.

## AS A TENTH CAUSE OF ACTION:

Loss of Rights To Familial Association – all defendants

90.     Plaintiffs hereby restate paragraphs 1-89 of this complaint, as though fully set forth below

91.     The defendant police officers conspired with other individuals and among themselves to arrest Ms. Niola and deprive her of her constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

92.     The actions of defendants, acting under color of State law, deprived plaintiffs of their due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States; in particular, the rights to familial association, to be secure in their person and property, to be free from the excessive use of force and from malicious prosecution, abuse of process, and the right to due process.

93.     As a direct and proximate result of defendants' actions, plaintiffs suffered and continue to suffer, mental anguish, repetitive injury, psychological and emotional distress, and physical pain and suffering, some or all of which may be permanent.

94.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiffs sustained the damages hereinbefore stated.

## AS A ELEVENTH CAUSE OF ACTION:

New York State Constitution, Art. I, §§ 5, 8, 11 & 12 – all defendants

95.     Plaintiffs hereby restate paragraphs 1-94 of this complaint, as though fully set forth below

96.     By reason of the foregoing, and by arresting, detaining and imprisoning Ms. Niola without probable cause or reasonable suspicion, and defaming, harassing and assaulting Iveon and Ms. Niola and depriving Iveon and Ms. Niola of freedom of speech and equal protection of laws, defendants deprived Iveon and Ms. Niola of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

97.     In addition, the defendant police officers conspired among themselves and conspired with the other individuals to deprive Iveon and Ms. Niola of their constitutional rights secured by Article I, §§ 5, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

98.     The defendant police officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as officers, agents, or employees. Defendant police officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant police officers acted willfully, knowingly, and with the specific intent to deprive Iveon and Ms. Niola of their constitutional rights secured by Article I, §§ 5, 8, 11 & 12 of the New York Constitution.

99.     Defendants, their officers, agents, servants, and employees were responsible for the deprivation of Iveon and Ms. Niola's state constitutional rights.

100.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Iveon and Ms. Niola sustained the damages hereinbefore stated.

## AS A TWELFTH CAUSE OF ACTION:

Assault – defendant police officers

101.    Plaintiffs hereby restate paragraphs 1-100 of this complaint, as though fully set forth below

102. When Iveon, who was terrified at the time, inquired as to what was going on, the defendant police officers called her a "nasty bitch" and shoved and pushed her with great force and viciousness causing Iveon to sustain serious injuries. Additionally, the defendant police officers slammed Ms. Niola into a wall, literally dragged Ms. Niola into their police vehicle, forcefully grabbing, pushing and shoving Ms. Niola in the process and slamming her body into several objects along the way. Further, one of the defendant police officers repeatedly pinched Ms. Niola's arms with great force and viciousness causing Ms. Niola to sustain serious injuries.

103. By reason of and as a consequence of the assault, Iveon and Ms. Niola sustained serious bodily injuries with the accompanying pain and were rendered sick, sore, and bruised and sustained, among other injuries, severe headaches, back pains, arm/shoulder tear/strain/sprain, deep cuts and or laceration to various parts of Ms. Niola's body and pain on various parts of their respective bodies.

104. Upon information and belief, defendant City of New York had sufficiently specific knowledge or notice of defendant police officers' propensity for violence and that their acts could reasonably have been anticipated. However, defendant City of New York failed to take any appropriate actions to assure Iveon and Ms. Niola's safety and security and failed to protect and or safeguard Iveon and Ms. Niola's interests.

105. That Iveon and Ms. Niola's were rendered sick for an extended period of time as a result of their injuries and were thereby prevented, and will be prevented, from pursuing their usual and ordinary vocation.

106. That defendant City of New York's failure to assure Iveon and Ms. Niola's safety and security was a proximate cause of Iveon and Ms. Niola's injuries.

107. That Iveon and Ms. Niola have thus far expended a substantial amount of money and incurred a lot of expenses as a result of defendants' actions, and will be required to expend and incur future expenses for medical treatment and other related expenses.

108. As a direct and proximate result of defendants' actions, Iveon and Ms. Niola suffered and continue to suffer serious injuries some or all of which may be permanent.

109. As a direct and proximate result of the misconduct and abuse of authority detailed above, Iveon and Ms. Niola sustained the damages hereinbefore stated.

## AS A THIRTEENTH CAUSE OF ACTION:

Intentional Infliction of Emotional Distress - all defendants

110. Plaintiffs hereby restate paragraphs 1-109 of this complaint, as though fully set forth below

111.   The defendants engaged in extreme and outrageous conduct, intentionally and recklessly causing severe emotional distress to Iveon and Ms. Niola.

112.   That Iveon and Ms. Niola's emotional distress has damaged their respective personal and professional lives because of the severe mental pain and anguish which were inflicted through deliberate and malicious actions including the assault, detention and imprisonment by defendants.

113.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Iveon and Ms. Niola sustained the damages hereinbefore stated.

## AS A FOURTEENTH CAUSE OF ACTION:

Negligent Infliction of Emotional Distress - all defendants

114.   Plaintiffs hereby restate paragraphs 1-113 of this complaint, as though fully set forth below

115.   The defendants engaged in extreme and outrageous conduct, intentionally and recklessly causing severe emotional distress to Iveon and Ms. Niola.

116.   That Iveon and Ms. Niola's emotional distress has damaged their respective personal and professional lives because of the severe mental pain and anguish which were inflicted through deliberate and malicious actions including the assault, detention and imprisonment by defendants.

117.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Iveon and Ms. Niola sustained the damages hereinbefore stated.

## AS A FIFTEENTH CAUSE OF ACTION:

Negligent Hiring and Retention of Employment Services - against defendant City of New York

118.   Plaintiffs hereby restate paragraphs 1-117 of this complaint, as though fully set forth below

119.   Upon information and belief, defendant City of New York, through its various agencies and departments including the defendants in this action, owed a duty of care to Iveon and Ms. Niola to prevent the physical and mental abuse sustained by Iveon and Ms. Niola.

120.   Upon information and belief, defendant City of New York, through its various agencies and departments including the defendants in this action owed a duty of care to Iveon and Ms. Niola because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that an injury to Iveon and Ms. Niola or to those in a like situation would probably result from such conduct described herein.

121.   Upon information and belief, defendant City of New York, knew or should have known through the exercise of reasonable diligence that the defendant police officers were not prudent and were potentially dangerous.

122.   Upon information and belief, defendant City of New York's negligence in hiring and retaining the defendant police officers proximately caused Iveon and Ms. Niola's injuries.

123.   Upon information and belief, because of defendant City of New York's negligent hiring and retention of the defendant police officers, Iveon and Ms. Niola incurred and sustained significant and lasting injuries.

### AS A SIXTEENTH CAUSE OF ACTION:

Loss of Consortium - all defendants

124.   Plaintiffs hereby restate paragraphs 1-123 of this complaint, as though fully set forth below

125.   During the entire time while Ms. Niola was incarcerated, Ms. Niola continued to worry and was highly concerned about her 5 children, who did not have anyone else to care for them.

126.   As a direct and proximate result of Ms. Niola's illegal and unlawful detention and confinement, Ms. Niola has lived and continues to live in constant fear, continues to suffer from nightmares, is fearful of stepping outside and now suffers various emotional setbacks and attacks. Additionally, Ms. Niola has been unable to function normally which has caused a severe strain and breakdown in her personal relationships, in and outside of her home and family circles.

127.   As a direct and proximate result of Ms. Niola's illegal and unlawful detention and confinement, Iveon, Christopher, Kyle, Joseline and John were and continue to be deprived of the normal companionship, solace and society of their mother, Ms. Niola.

128.   As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiffs sustained the damages hereinbefore stated.

### RESPONDEAT SUPERIOR

129.   Defendants, their officers, agents, servants, and employees are responsible for the damages suffered by plaintiffs; defendant City of New York, as employer of the defendant police officers, is responsible for their wrongdoing under the doctrine of respondeat superior.

## DECLARATORY RELIEF

130.    By reason of the foregoing, defendants deprived plaintiffs of their due process rights, and rights, remedies, privileges, and immunities guaranteed under the laws of the United States. As such, plaintiffs are entitled to a declaration from this Court that the defendants willfully violated plaintiffs' due process rights, and rights, remedies, privileges, and immunities guaranteed under the laws of the United States in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

## SPECIFIC RELIEF

131.    Plaintiffs seek an order of injunction prohibiting defendants from engaging in the unlawful conduct described herein.

**WHEREFORE,** plaintiffs respectfully request judgment against the defendants as follows:

1.      On the First Cause of Action against all defendants, compensatory and punitive damages in an amount to be determined at trial, and reasonable attorney's fees and costs under 42 U.S.C. § 1988;

2.      On the Second Cause of Action, against defendant police officers, compensatory and punitive damages in an amount to be determined at trial;

3.      On the Third Cause of Action, against all defendants, compensatory damages in an amount to be determined at trial, punitive damages against defendant police officers in an amount to be determined at trial;

4.      On the Fourth Cause of Action, against all defendants, compensatory damages in an amount to be determined at trial, punitive damages against defendant police officers in an amount to be determined at trial;

5.      On the Fifth Cause of Action, against all defendants, compensatory damages in an amount to be determined at trial, punitive damages against defendant police officers in an amount to be determined at trial;

6.      On the Sixth Cause of Action, against defendant police officers, compensatory and punitive damages in an amount to be determined at trial;

7.      On the Seventh Cause of Action, against defendant police officers, compensatory and punitive damages in an amount to be determined at trial;

8.      On the Eighth Cause of Action, against defendant police officers, compensatory and punitive damages in an amount to be determined at trial;

9.      On the Ninth Cause of Action, against defendant police officers, compensatory and punitive damages in an amount to be determined at trial;

10.      On the Tenth Cause of Action, against all defendants, compensatory damages in an amount to be determined at trial, punitive damages against defendant police officers in an amount to be determined at trial;

11.      On the Eleventh Cause of Action, against all defendants, compensatory damages in an amount to be determined at trial, punitive damages against defendant police officers in an amount to be determined at trial;

12.      On the Twelfth Cause of Action, against defendant police officers, compensatory and punitive damages in an amount to be determined at trial;

13.      On the Thirteenth Cause of Action, against all defendants, compensatory damages in an amount to be determined at trial, punitive damages against defendant police officers in an amount to be determined at trial;

14.      On the Fourteenth Cause of Action, against all defendants, compensatory damages in an amount to be determined at trial, punitive damages against defendant police officers in an amount to be determined at trial;

15.      On the Fifteenth Cause of Action, against defendant City of New York, compensatory damages in an amount to be determined at trial;

16.      On the Sixteenth Cause of Action, against all defendants, compensatory damages in an amount to be determined at trial, punitive damages against defendant police officers in an amount to be determined at trial; and

17.      Such other and further relief as this Court may deem necessary in the interest of justice.

Dated: Williamsburg, New York
        November 8, 2010

                     Respectfully Submitted

                     **NNEBE & ASSOCIATES, P.C.**

                     /s/Okechukwu Valentine Nnebe
         By:     Okechukwu Valentine Nnebe
                     472 Union Avenue, Suite 1000
                     Brooklyn, New York 11211
                     Tel. No.: (718) 937-8000
                     Fax No.: (718) 937-8001
                     *Attorneys for Plaintiff*